2020 JUN 22 PM 12: 11
FILED

Case 8:19-cv-02865-CEH-AAS

Appeal of Case Closure

I n reference to the above case, although I had indicated a change of address in my third amendment, the response to my amendment was sent to my old address. The Courts error in addressing my mail coupled with the COVID pandemic and its effects on mail distribution caused me not to receive the mail. However, I called the court clerk on June 5, 2020 and requested that a copy of the document be sent to my new address. The Courts document was subsequently sent to my current address and I received it a week ago. So, it was not possible for me to meet the deadline as I received the information after the deadline.

I hereby plead with the court to appeal my case as the mix-up of the address and the delay in my receiving the Court's communication were beyond my control.

Case 8:19-cv-02865-CEH-AAS

Appeal

Racial and gender discrimination, retaliation, and unlawful termination

Plaintiff

Antonia S. Richmond

Defendants

i. Polk County Health Department
ii. Joy Jackson
iii. Leroy Dux
iv. Tammy Durden
v. Lisandra Crespo-Sanchez

I wish to appeal the Court's decision regarding the dismissal of my petition.

## 1. LEGAL STANDARD

Under Fed R. Civ. P 8(a)(2), I am seeking relief against the four defendants because of the proof of my claim against them. I hereby ask the Court to allow me the opportunity to present my case before a jury of my peers.

Although Polk County Health Department may be immune to legal action in accordance with the Courts citation that Polk County Health Department is immune to legal action *Eldelman v. Jordan,* 415 U.S. 651, 622-63 (1974), Title 29, United States Code {29 USCS § 206 } allows me to include Polk County Health Department in my suit over compensation and violation of the FLSA.

Title 29 United States Code § 216(b) permits me to maintain action against any employer, on my behalf or other employee, for unpaid minimum wages and unpaid overtime compensation. Therefore, my claim for non-payment of wages due is against Polk County Health Department, in accordance with the provisions of Title 29, United States Code § 216(b)

I made several allegations against the defendants, Joy Jackson, Leroy Dux, Tammy Durden, Lisandra Crespo-Sanchez but the Court dismissed the entire lawsuit citing *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (*per curiam*). However, I have proof and fact to substantiate my claims.

## 1. BACKGROUND

In the second paragraph of Document 14 II BACKGROUND, the court stated erroneously that I had been given four opportunities to amend my petition. But I had three chances, instead.

### A. FLSA Claims

Under FLSA Claims, the court erroneously stated that I was merely promised a position but that it was given to someone else. However, in my allegations, I stated that I was an employee of the Health Department during the time and that in addition to my regular position, I was assigned to an additional position for six months on the understanding that I would be paid separately. Moreover, a staff meeting Durden announced that she was working on the payment arrangement. However, I never received any pay for that position. That was a breach of fiduciary duty.

In so much as the Court cites that Polk County Health Department was immune to suits in federal courts, the Eleventh Amendment, Title 29, United States Code § 216(b) permits me to bring a suit against any employer even a state employer, Polk County Health Department being one.

> "Any employer who violates the provisions of section 6 or section 7 of this Act [29 USCS § 206 (unpaid minimum wage) or 207 (unpaid overtime compensation)] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages … An action to recover the liability [under the Act] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other similarly situated."

As per the elements of the breach of fiduciary duty,

(i) a fiduciary relationship must exist between the plaintiff and defendant
(ii) the defendant must have breached the duty
(iii) the breach must result in injury to the plaintiff or benefit the defendant. *Payball at Hauppauge, Inc. v. Narotzky* 296 A.D.2d 449. 745 N.Y.S.2nd 70 (2002).

My claim showed me to meet all the elements because, I was employed with the Polk County Health Department where the defendants worked in leadership positions, that the defendants promised but regened on their promise to pay me for the additional position to which I had been assigned and which I held for approximately 6 months, that the defendants' failure to fulfil their promise for payment for the services I rendered caused me mental anguish because the beach caused me to mistrust them, and suffer mental anguish. Also, I felt that I was being used and more so when I learned that a white employee was being paid for the two positions she

held I felt that they were punishing me because of my skin color. Furthermore, I felt that the failure to pay me as promised was all a retaliation against me for reporting them for their violations against African-American and the LGBTQ patients.

So, the defendants violated my rights by not only failing to pay me but also by discriminating against me when a white employee was paid for the two positions she held. The anguish was so unbearable that I felt frequently ill often and needed medical services. Therefore, since the Joy Jackson, Tammy Durden, Leroy Dux, and Lisandra Crespo-Sanchez who were in breach of fiduciary duty, were employees of Polk County Health Department at the time the breach was committed, Under Title 29 United States Code § 216(b), this claim for breach of fiduciary duty is against the Polk County Health Department.

Also, the defendants' failure to pay me for the times violated Title VII of the Civil Rights Act of 1964 as served as an example of the systemic racism and bigotry that permeate the fabric of the Polk County Health Department culture even today.

The Court erroneously interpreted my statement to indicate that I was promised the position but that the position was offered to someone else. Nevertheless, as I stated in my previous filings and hereby reiterate, I held the position for approximately 6 months but was not paid for the for the position. I left because I had to go on a 12-week family medical leave. The position was subsequently filled by a new employee who was paid.

Below were my exact words from my third entry to the Court that left no other interpretation as to my having worked for approximately 6 months but was not paid:

"*From about June of 2016 to January 2017 although I worked in the outreach section of the health department, I was assigned by Leroy Dux and Lisandra Sanchez-Crespo an additional position as the prenatal care coordinator in the clinic section of the health department when the position was vacated. I was promised a pay of $20 and hour for 20 hours per week. However, I was not paid for my duties despite the promise from Tammy Durden during a general staff meet that she was "working on it". The position was subsequently assigned to a new employee when I went on Family Medical Leave.*"

Furthermore, under Title 29 United States Code § 215(a)(3) - Prohibited act, prima facie evidence, the defendants violated my rights because "it shall be unlawful to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee;"

Rather than pay me for the 6 months of work that they assigned and agreed to pay me, the defendants engaged in a campaign to retaliate and demoralize me through the following actions:

My vehicle was vandalized and I was refused the opportunity to see the security video that would have helped to identify the perpetrator; I had enclosed a copy of the evidence of the vandalism in my initial filing and hereby include it (Appendix A).

The defendants ordered me not to refer to myself as doctor, although I earned two doctoral degrees in Medicine and Public Health. Whereas a male employee with a similar educational background but without a doctorate in Public Health was created a door label that identified him as doctor (Appendix B). Also, other employees of the Florida Health Department of which Polk County Health Department is a branch, were referred to as doctor in correspondence (Appendix C)

The defendants sometimes denied me lunch and other times interrupted my lunchtime

The defendants monitored my every move, even stalking me to a local supermarket

"where did you get it" was Leroy Dux's comment about my MBA degree

The defendants changed my duties, making me do more than was required of my position

The defendants ordered me to email several supervisors the names and address of my visits - no other employee was required to do the same and I had shown them no reason to mistrust me.

The retaliatory measures against me ended with my termination on September 4, 2018.

**B. Title VII Claims**

Since the Court has dismissed my claim because "the relief granted under Title VII is against the employer, not the employees whose actions would constitute a violation of the Act.

The Court asserted that "Unlike actions brought under the FLSA, the Eleventh Amendment is not a bar to the Title VII claim against a state entity. *Allen v. Alabama State Bd. Of Educ.,* 816 F.2d 575, 577 (11th Cir. 1987)".

Therefore, my claim is against Polk County Health Department the employer of Joy Jackson, Tammy Durden, Leroy Dux, and Lisandra Crespo-Sanchez, whose actions constitute a violation of my Title VII claim.

The court also stated "However, the plaintiff must exhaust her administrative remedies before filing a private civil action. *Wilderson v. Grinnel Corp.,* 270 F.3d 1314, 1317 (11th Cir. 2001). ... These include certain statutory prerequisites such as timely filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). .... Although Ms. Richmond claims she exhausted her administrative remedies Ms. Richmond failed to provide a right to sue letter. (Doc. 13, p.6)."

Accordingly, I had contacted the EEOC office within the first few weeks of my termination and was duly scheduled for an interview during which time I filed a charge of discrimination with the EEOC (Appendix E), and was granted a Right to Sue. I submitted the original copy of

the Right to Sue to the Court on the first day I entered my plea. Nevertheless, I hereby attach a copy of the Right to Sue as well as the complaint I submitted to the EEOC (Appendix D).

**C. Florida's Whistleblower Act**

"to prevent agencies and independent contractors from taking retaliatory action against an employee who reports danger to public's health, safety, or welfare or who alleges improper use of governmental office, gross waste of funds, or other abuse or gross neglect of duty." *Competelli v. City of Belleair Bluffs*, 113 So.3rd 92, 94 (Fla.2d DCA 2013).

I filed a case against the Polk County Health Department leadership for several violations, with the Office of the Inspector General and Office of General Counsel to indicate among other charges, that:

i. White patients with HIV and Hepatitis were selectively being treated with free drugs whereas Black patients were not given the free medication
ii. That medication was being wasted
iii. That I was ordered to diagnose patients illegally [under Title XXXII Chapter 458 (1)(a)]
iv. That I was required to draw patients' blood without the requisite training and certification
v. That I was being treated unfairly because of my race and gender.

It was that filing that prompted several retaliatory actions against me. However, when I called attention to the last violation I knew about, which involved a physician engaging in gross waste of funds and indiscriminately ordering laboratory tests to boost his service scores, I was fired within days. Subsequently I contacted the EEOC office for wrongful termination among other claims

I respectfully pray that the Court reinstate my claims as they are valid and because I have met all the requirements according the Statutes. I also pray that the Court grant me the relief I seek in the amount of $22,000,000, which includes unpaid wages of $10,400 and payment for the mental anguish I suffered because of the defendants' actions during my employment at Polk County Health Department and as a result of my unlawful termination.

Four attachments:

Appendix A – phone of vandalize tire on my vehicle.

Appendix B – Dr. Ovidiu Cotea's name plaque

Appendix C – proof that the Health Department refers to PhD as doctor.

Appendix D – Right to Sue from EEOC

Appendix E – my complaint to EEOC



Appendix B

M Gmail

# Dr. Ovidiu Cotea

AmaranthLilly . <cntonia@gmail.com>
To: Tonia C <cntonia@gmail.com>

Tue, Dec 5, 2017 at 2:35 PM

297
19K

**Richmond, Antonia S**

---

**From:** DOH COMMUNICATIONS OFFICE
**Sent:** Wednesday, March 21, 2018 9:33 AM
**Subject:** Dr. [redacted] Named Administrator for DOH in Columbia and Hamilton Counties

Dear Colleagues,

It is my pleasure to announce Dr. Thomas [redacted] as the new Administrator for the Florida Department of Health in Columbia and Hamilton Counties, effective March 21. Dr. [redacted] will be responsible for overseeing all operations including planning, directing, developing and coordinating public health programs and activities. Previously, he served as the Emergency Management Planner for DOH-Columbia and DOH-Hamilton, a role he had held since 2017.

Dr. [redacted] has over 30 years of experience serving the public in the areas of military operations and academics. Before joining the Department he was Superintendent for the Hamilton County School District from 2012 to 2016. He was an Instructor at North Florida Community College from 1997 to 2012 and a Graduate Teaching Assistant and Adjunct Professor at Valdosta State University from 1996 to 1995. From 1985 to 1995 he served in the U.S. Navy. Dr. [redacted] is currently an Adjunct Professor at his alma mater, Valdosta State University, a role he has been fulfilling since 2016.

Dr. [redacted] received his Doctor of Philosophy in business with an emphasis on information technology in 2012 at Capella University in Minneapolis, MN. He earned his Bachelor of Science in Education in 1996 and a Master of Science in Education in 1997, both from Valdosta State University. Dr. [redacted] currently serves on the Florida Association of District School Superintendents, Florida Association of School Administrators and the Florida School Boards Association. He was a member of the Florida Association of Community Colleges from 2000 to 2009 and served on several academic related committees at North Florida Community College, including technology, distance learning and staff recruitment.

I would also like to thank [redacted] for serving as interim Administrator for DOH in Columbia and Hamilton Counties since September 15, 2017. Tito will continue to serve as the Administrator for DOH-Citrus, as he has since December 2015.

Please join me in congratulating Dr. [redacted] as he takes on his new role. His leadership and administration experience in public health will serve the people of Columbia and Hamilton Counties well.

[redacted], M.S.
Deputy Secretary for County Health Systems

Appendix B – Right to Sue

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7018 1830 0000 1246 3518

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

September 05, 2019

Ms. Antonia Richmond
115 E. Van Fleet Drive
Apt. 313
Bartow, FL 33830

Re: EEOC Charge Against Polk County Health Dept.
No. 511201901563

Dear Ms. Richmond:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Tampa Area Office, Tampa, FL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by [signature]
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Tampa Area Office, EEOC
Polk County Health Dept.

Appendix E
My Complaint to EEOC

Racial and gender discrimination and unlawful termination of employment - Antonia Richmond

I started working at the Polk county health department in December 2014 and hoped to work my way up since I had just completed my medical degree and was working on my Public Health doctoral dissertation. The position for the administrator became vacant I interviewed along with Leroy Dux but he was offered the position instead. Soon after he assumed the position, he became hostile especially to the black employees.

For several years prior to Leroy Dux's appointment as the administrator he was the manager in the Hepatitis C/Immunization department although he had no health care background. However, when I requested that I take over that position, he declined with the explanation that he wanted a nurse instead.

Furthermore, I was not hired for every subsequent position that became vacant. Two of the positions I applied for were re-advertised although, I was very qualified for the positions and had interviewed for them. The positions were always filled with someone much less qualified than me.

Also, I applied for a management position to do the duties I had been doing since the previous manager resigned instead; Leroy Dux offered the position to Lisandra Sanchez-Crespo who has a bachelor's degree in Arts and no training or experience in public health. Ms. Crespo became my supervisor although in addition to a doctoral degree in Medicine, I have a doctoral degree in Public health, a master's degree in business administration, as well as a national certification in public health.

Sanchez-Crespo became Leroy Dux's co-conspirator. Her introductory reference to me was "honey"; while repeatedly jabbing her right fist in her left palm, she said honey empty the sharpie container.

Furthermore, she and Leroy Dux would instruct the receptionist to call me several times during day.

- After having been accosted at the parking by Tammy Durden and informed that I should not refer to myself as a doctor, Leroy and Lisandra followed up with verbal and written instructions to that effect. I was instructed to remove my qualification "MD" from my email and to refer to myself as doctor although a White male employee who also has a doctoral degree in medicine but without license, had the appellation Dr. Ovidiu Cortea on his door. The tag bore the Florida health department's logo, as such was created and sanctioned by the health department leadership for Cortea. Furthermore, the name plaque was at Cortea's door for at least, four years: as long as I worked at the health department. Yet, Dux and Sanchez lied in an affidavit that they had not seen the signage which 4 inches was approximately wide and 6 inches long. Both Leroy Dux and Lisandra Sanchez walk by and sometimes, into Ovidiu's office several times daily, as such, not have missed the name plaque especially since Ovidiu's office was the first and one of only three offices in the hallway of the clinic.
- I was not allowed to refer to myself as doctor yet, master's degree-level nurses do not correct their clients when the clients refer to them as doctors, which they clearly are not.

After my report Dux and Sanchez found other ways to frustrate me.

- because I had reported that I was being made to work as a phlebotomist when I do not have a certificate to practice phlebotomy, Dux and Sanchez called me to a meeting with two other people who said that all I would exclusively perform phlebotomy to individuals who came in to

screen for sexually transmitted disease (STD). They had thought that I would refuse so I could be fired on the spot. However, I did not.

- But a breast-feeding woman who had tested positive for one STD was referred by her physician to come for HIV screening. According to protocol, she was supposed to be given a rapid test that would produce result within 15 minutes, so as to be put on treatment immediately to prevent the transmission of HIV to her breast-fed infant. However, because of the restriction on me I could not provide her the prescribed help. Instead, I took her blood sample and the result took approximately two weeks for the woman to know her status. In essence, the health department broke protocol and put an infant in danger of contracting HIV just to punish me for reporting them.
- I was called in to impromptu meetings for several made-up reasons, ranging from I took too long with a patient to I served a patient out of order.
- On my break time when I was outside making a phone call in my car, Leroy Dux would stand by my car to eavesdrop on my conversations.
- One afternoon he followed me to the local Walmart and remained in his vehicle.
- Every time I called in sick, Sanchez would call my phone but would not leave any message. She did the same thing whenever I was out of the office to visit clients' homes.
- Sanchez and Leroy Dux instructed me that I must email them and other supervisors to inform them of the clients' names and addresses I planned to visit. None of the White employees was given such instructions.
- To demean me further, Lisandra Sanchez created a roster which was passed on the Leroy Dux for approval and for dissemination to all staff. On that roster, under license, the name of the Ovidiu Cotea, the non-licensed physician had nothing but by my name she wrote "HST".
- Also, rules and parameters regarding my duties were frequently changed without notification.
- On one occasion, the electricity in my office was selectively turned off; yet, no other office lost power.
- I applied and interviewed for a position, rather than hire me, they re-advertised the position and selected another candidate with a first degree.
- My car was vandalized (eleven nails in one tire – see photo) on a day that I did not show up for staff meeting which other outreach workers also did not attend.
- No attempt was made to investigate the vandalism; instead, despite the written notices regarding the premises being under surveillance, Leroy Dux claimed that there was no video recording of the vandalism
- I was assigned the prenatal care coordinator's duties for about six months without the promised pay of $20 an hour for 20 hours per week as the position paid. The last I heard about the payment was during a staff meeting, when, an employee of the Polk County Health Department spoke up about it and Tammy Durden replied by saying "we are working on it".
- I had been hired as an outreach worker; but, months later my contract was changed without the benefit of change in pay.
- My responsibilities always changed according to Their whims.
- Despite agreed upon lunch times, Leroy would frequently disrupt my chances of having lunch by simply appearing at my office one minute before my lunch time for meetings.

I was asked, then ordered to perform the duties of a licensed physician.

A case in point was when a provider Dr. Chiriboga asked me several months ago to attend to her patient because she needed to run an errand. When I refused, she asked a registered nurse, who obliged. On several occasions Mr. Dux and Ms. Sanchez-Crespo have directed me to take on tasks that are the responsibilities of providers such as diagnose patients who come in for STD symptoms before sending them in for medication.

Mr. Dux and Ms. Sanchez-Crespo called me in for a meeting during which Mr. Dux "ordered" me to write patients' clinicals. I did not work in the clinic section of the health department and as a linkage to care person, my duties did not include diagnosing patients and writing their medical reports. The attached supporting document specifies the linkage-to-care protocol.

The last incident before I was fired occurred during a question-and answer session of a staff meeting on August 3, 2018 when I inquired why all the HIV-positive patients were tested for G6PD deficiency, a very rare genetic disorder that is seen a small percentage of males of African, the Middle Eastern, Mediterranean and Asian heritage.

As soon as I raised the issue, Leroy Dux, the administrator retorted that I was not an infectious disease physician and had no right to bring up the issue. His comment incited other employees to start talking at the same time. The atmosphere was so charged that he called a recess. Leroy Dux's reaction and the reaction of those who made demeaning comments about me prompted me to give the matter a rest.

However, two weeks later, Dr. Diaz, the physician who had ordered the tests, telephoned me; toward the end of my conversation with him, he indicated that he would test only the patients for whom he would prescribe a sulfur-based medication used in the treatment of HIV.

It is worthy of note that Ovidiu Cortea, another unlicensed physician had gone to Dr, Diaz, the new physician who ordered the laboratory test to ask his rationale for the test. Ovidiu Cortea did not face any consequence. He is male and Caucasian.

However, Mr. Leroy Dux's default reaction to anything I said was a snarking demeaning comment. In addition, he was prone to outbursts which seem to appear and disappear instantaneously. If I was male and white, Leroy would not have spoken to me the way he did. Indeed, it was his strong language that incited the snickering remarks from other employees. I sent out an email message after my conversation with Dr. Diaz to the employees who had been present at the meeting because I used the opportunity to explain the merits of my reasoning on G6PD deficiency because I had not been given the opportunity to speak further after my first utterance. Besides, there is nothing in the employee handbook that prohibited the sending of email messages to fellow employees.

My intension was not to bruise Diaz's or anyone else's ego, but to speak up against waste of resources. Too many wrong-doings have been going on at the health department because there is no oversight on the physicians. Instead, the attempt was to punish me, the whistle blower and try to cover-up misdeeds.

If I had been wrong in my assertions about G6PD Dr. Diaz would not have changed the category of patients on whom to test for G6PD deficiency.

The fact of the matter is that one does not need a degree in medicine, but a course in genetics or biochemistry to know that the test was unwarranted and wasteful. Why Dr. Diaz ordered the test was to increase his service scores. A nurse was fired for increasing her service scores fraudulently. It is worthy of note that Dr. Diaz stopped working at the health department a few weeks after I brought up the issue of G6PD deficiency tests.

Also, I know that the issue of increased cost of laboratory tests had been discussed during a different staff meeting. Once again, if I was male and white, Dux's reaction would not have been an outburst.

- Leroy has since made it his goal to foster a hostile work environment and maltreat the African American employees in this health department.
- He has tried intimidation, surveillance all to no avail.
- He forced Eda Dugas, an African American employee to quit after threatening to fire her; yet apologized to her on her last day.
- He ordered Fabiola, another African American employee to go home for what he considered inappropriate outfit, yet, on the same day there was white employee who frequently came to work in jeans and wore jeans on a Tuesday, a clear violation of the PCHD dress code. Fabiola has since been fired by Leroy Dux.

The medical director, Dr. Joy Jackson claimed that no one assigned me the duties of a physician. However, she was always at her office in a different building. On the average, she came to the HIV clinic twice a year for Christmas and World AIDS day celebrations during which times she would stay at the lobby for a few minutes, give notes of thanks, then walk away.

Nevertheless, she would align with his officers without verifying the truth. She engaged in cover-up because it would reflect badly on her as an ineffectual leader. For instance, she quietly fired a nurse who was falsifying the type of medication she gave to patients with tuberculosis. However, she covered up the misdeed rather recall the patients for proper medication. Her action was dangerous and could lead to the spread of treatment-resistant tuberculosis, yet, she chose to protect her reputation instead of performing the public health duty of notifying and treating those affected by the nurse's misdeed.

I have been employed by the Respondent since 12/19/14 as a Health Services Rep. On 10/25/17 I sent an email to Ms. Williford, Linkage to Care Coordinator (Associates Degree) where in essence I informed her and upper Management who was copied on the mail including Mr. Dux, Administrator, and Ms. Sanchez, Supervisor, how I refused to perform duties of a licensed physician when I am not, despite my 2 doctorate degrees in Public Health and Medicine. As a result of this email in which I refused to violate the law, I was subjected to my first formal reprimand for the highly subjective infractions of insubordination and conduct unbecoming of a public employee on 11/27/17. On the reprimand I was invited to file a formal complaint with the Office of Inspector General (OIG) in order for them to investigate and or address my concerns. On 01/18 I did file two formal complaints, one with OIG and one with Office of General Counsel (OGC), Equal Opportunity Section; wherein, I brought several issues to their attention including harassment and a race/sex discrimination issue. On 03/19/18 OGC issued a mixed findings determination. Whereas, they allegedly could not substantiate harassment by Mr. Dux due to my race and or color, but did correct the discrimination issue that I brought up in my complaint which they allegedly "became aware" of during the investigation. OIG on the other hand issued their findings on 04/25/18 with regard to the issues they investigated. Specific to the race/sex discrimination issue, although they claimed it was "unsubstantiated" they noted the corrective action that was taken in order for the different treatment to end. On 08/16/18 during a staff meeting when Mr. Dux opened the floor for questions, I brought up some concerns, and was treated in a discriminatory and retaliatory manner by him. Whereas, when others asked questions, these were addressed by him. Meanwhile, when I asked mine he said "you don't have a right to ask that question because you are not a licensed physician." His response caused so much commotion among the staff, that he decided to call for a 10 minute break. On 08/16/18 I sent an email to Mr. Dux and all other coworkers that were present at the meeting, when I brought up my concerns to him and was shut down. In the email I proceeded to explain how Dr. Diaz had called me the day prior to inform me he agreed with my concerns during the meeting and was going to begin to only test particular individuals instead of everyone. I also noted the reasons why I believed the practice should change in the clinic. Finally, I also explained how despite his snickering and condescending remarks in front of all that I was not a physician, how I truly was a physician despite not being licensed. As a result of this email, once again Mr. Dux and Management decided to reprimand me for the same subjective infraction they had accused me of the year prior, insubordination and conduct unbecoming, and to recommend my termination. I was officially terminated on 09/04/18.

I believe the Respondent including but not limited to Mr. Dux retaliated and discriminated against me due to my race (black), national origin (Nigeria) and sex (female) with regards to the disciplinary actions they issued me and which they used as basis to recommend and obtain approval for my termination, in violation of Title VII of the Civil Rights Act of 1964, as amended.